I'm Joe Alford Eisen Jr. Your Honor, attorney for the appellant Swanson's FSA services was also involved in this case because it received a deficiency. Could you please keep your voice up? I will try. Is this any better? You can stay in the middle. Just try to raise my voice a little bit. Thank you. Okay. Yes, ma'am. This case presents three basic issues, but they all fall on the grounds of who should pay the taxes on the monies that the government issued the deficiencies on. Now, in the history of our taxation, control has always been looked at to determine ownership of income. But there has never been a ruling that you can impose taxes for income on some taxpayer simply by association. And that's what I urge that has happened in this case. That's the error that we present, basically. Also, as our third point of error here, we complained of the disregard of stipulations. Now, you would ask yourself, fine, the tax court practices stipulations being argued as an error here. Well, you will find in the record of this case that there were stipulations and deductions allowed for business expenses. And then it was argued to the tax court, and the tax court found that the very business expenses that had been allowed for deductions were proof of sham. Now, the government argues that the tax court was relying on different deductions that hadn't been stipulated. And it wasn't clear to me from your briefs, or from the tax court, they were vague enough that it was pretty hard to say that the tax court was relying on items that were stipulated. This is a very onerous task. The record is very large. Because the stipulated record was dumped into the regular record of trial for purposes of your review now. Because they made the stipulation an issue. I mean, the stipulations involved documents that are literally this high that fill the whole table. But the point is that I do not agree, we do not agree with the government's statement. We believe a close examination of the record in this case will reveal, for instance, travel, meals, education, insurance, newspaper article expenses, which were allowed and then argued as a sham. And you simply can't do that. A party's got a right to rely on the stipulation before it goes into a trial, knowing what's going to be an issue with the government. But when I look at your brief, I couldn't draw that line. I couldn't say the tax court clearly relied on something that had been stipulated by the government. Your brief didn't help me. Well, I'm sorry if it didn't. I thought we had the references that showed what deductions had been stipulated to and then what was disallowed. And that was the basis of the tax court's opinion. What would you have me look at in the record? Okay. I would like you to look at stipulation number 55, stipulation number 56. Now, are you talking about the paragraphs in the supplemental stipulation of facts? Yes, ma'am. So you're saying, so for example, 55, the parties agree that travel expenses for the FSH business for taxable year 1993 are $62. And where in the tax court opinion is that identified as something that it was relying on? Well, the answer is that it was allowed by the Internal Revenue Service. I think the question would be where did they disallow that when it was allowed in the stipulation? And she makes a broad-based comment that there is no valid business expense here. That's what I'm trying to tell you. She's found that all of the expenses are sham. This is not a case where the tax court took this case, analyzed it, and said there's $50,000 of valid expenses, and they're not sham expenses, and the sponsors are not responsible for income on these expenses that are being disallowed, taxes on it. She didn't separate it that way. Well, the expenses for orthodontia and dental and medical and those, you know, I found it very hard in looking at the record because our rule really requires 30.1, the Ninth Circuit rule. It seems to me parties include excerpts of record, only the docket sheet, the tax court's opinion, their motion for reconsideration with attachments, and the denial thereof and their notice of appeal. The excerpt of record is 57 pages. The tax court record, on the other hand, consists of four large boxes of material, and the trial transcript wasn't included or even the declaration of trust and indenture where the overarching question is whether the trust at issue is a sham. Is there any reason why these things were not included? We believe that the tax court record, in our experience, would be forwarded. We remember the admonition of the court that they had all the record available to them, but we filed a voluminous supplemental appellant excerpt with this that contained everything we mentioned in our brief after we were notified by the court. The supplemental was helpful. Yes, Your Honor. I want you to understand that. We have scanned that, and we have that, I believe, in searchable form. If the court wants us to file an electronic version of it, we brought it over here with the fiscal. Thank you. The point I'm trying to make here is that the tax court does not give a basis of finding legitimate expenses and then finding that there was amount of legitimate expenses and there was expenses that indicate sham and then saying that she's going with sham and not legitimate business expenses. The tax court opinion, in essence, says there's no legitimate business expenses. When you decide a sham case, you have to find that, for tax purposes, the FSH services is the Swanson. The other issue we have in this case, which is important. Just a minute before you go away from that one. I read paragraph 65, 66, and so on, the stipulations, but I couldn't tell, of course, what amount of money they were talking about there as opposed to what the orthodontist and all the other personal things came to. Let's say that the business expense was allowable but insignificant in amount compared to the overarching personal expenses. Where does that leave us and leave you, for that matter? Where it leaves us is that expenses to find an entity to be a sham need to be substantial, not insubstantial. If the personal expenses are substantial, then, and the business expenses, which you didn't detail, are insubstantial, then that doesn't help you. No, the situation that we're in is as follows, and that is that if you're going to find an entity a sham and disregard it, the personal expenses spent for someone in their personal capacity without any benefit to the business that you want to brand the sham are such that you can base the sham finding on. Well, that's only really one of the factors, right? There are the four factors that the tax court looked at, and essentially in going through them found that there was no, in effect, real purpose for the trust other than the Swansons were using it as their own entity. The evidence doesn't support that. They had numerous contractors. They had this Richard Evans who controlled the money. Richard Evans spent the money. They didn't show any personal benefit to the Swansons on this record except what is arguable personal business and also business expense. So the argument, the government's argument is Evans signed everything that was put in front of him except in the one case where he gave money to his girlfriend, which was the Swansons said was wrongful, and they fired him, in effect, and that was the government's argument in support of the tax court's ruling on that point. Why was that wrong? It's not supported by the evidence. There's contracts with Evans' signature. There's indications in this record, and we cite in our brief, where Mr. Evans actually did business, negotiated loans, and did all sorts of things for FSA services. That's an interpretation of the record that's just not borne out when you look at the record. Isn't it true that the Swansons could not be removed from the trust without a 30-day notice, and they exercised control in demanding Evans' resignation? I don't believe they exercised control in demanding Evans' resignation. There was a beneficiary that was a Swanson, and the beneficiaries requested that he resign because of a clear fiduciary breach of duty. If Evans had not resigned voluntarily, they'd have had to sue him. I don't believe that's a proper interpretation of the trust. I'll leave it to you to read. How could he really be then deemed an independent trustee? An independent trustee is one who, without intervention of the courts, cannot be removed by request of the beneficiary. So read the document. That's the organizational test for trust. If you have to go to court to get the trustee out of there because of the allegations that you've made, he's an independent trustee because you cannot threaten him. You cannot use contractual power and act privately to remove him. But they did force his resignation because he was using funds for his mistress or something. They did not force his resignation. He voluntarily resigned. Well, he didn't want to resign. Isn't that true? I don't know what he wanted. That's not the case. The case is you go by the documents. We're onto another question when you ask me that. You ask me, under the documents, is he an independent trustee? The answer is yes because he cannot be removed unless they go to court and remove him. The only exception to that in the document is trustees, if there was more than one, could remove another trustee. But Swanson's were not trustees. That's basically where we are, and I'm almost out of time. You are out of time. No, that's the red light on means that you're over time. Oh, it is? Okay. Thank you. Good morning. I'm Mike Hongs from the Department of Justice here on behalf of the Commissioner of Internal Revenue. The government's position in this case is that the tax court did not commit clear error and, indeed, was eminently correct when it found that this purported trust through which the taxpayers were operating an engineering business was a sham that lacked economic substance and should be disregarded for tax purposes and the income attributed directly to the Swansons. We think the court correctly applied a four-factor test that this court talks about in the Sparkman case, relying in turn on the older tax court case of Markosian. I don't know that it's clear that all four factors necessarily would have to be satisfied, but we think the tax court properly found that, really, there was evidence supporting all four of them in this case. There is the evidence in the record showing that Evans apparently independently issued loans based on the trust's funds without any supervision. It seems to be acting independently and changing the nature of the relationship between the Swansons and the trust. How do you respond to that? I wasn't aware that he was issuing loans independently or without the blessing of the Swansons, but I think one point there would be, although the trust did engage in some loan activity, it was very minor in amount compared to the overall funds that were coming in. In other words, it was primarily an engineering consulting business. There was some lending going on, but it was not the gist, or it was not where most of the money was coming from. Well, lending did generate income for the trust, isn't it? Yes, a small amount. I don't recall the figures, but it was not the primary income source of the trust, and I think the tax court quite properly found that the gist of what the trust was doing, called the FSH business, was running an engineering consulting company. There was a lot of testimony on this in the tax court that the clients hired Dave Swanson because they knew him. He had a good reputation as an engineer. They found out when they hired him that he was working with or through or in conjunction with this FSH that maybe who they wrote the checks to, but they regarded him as the person that they were really dealing with and they were really hiring, and that was the gist of the trust business. That was its main business. Regarding this issue, the court was asking Mr. Eisen about the stipulations. The answer to that is that it is true. The stipulations don't always say exactly which expenses there are, but it is true. The commissioner did agree to a number of deductions when they really got into the litigation and the documents got produced and the IRS lawyers looked at this. They did agree there were a number of places that there were legitimate business deductions, but there were some that were not stipulated to, and the stipulations do say there are certain points where they say certain amounts are not stipulated to. I can give you a few examples. Paragraph 48 in the stipulations, which had to do with medical expenses. Paragraph 65. Paragraph 81. There was also testimony that the court found, I think, rather incredible to the effect that they were trying to deduct tuition for sending their children to private school. That's not a business expense. That sort of thing, and it's true. The court did not really break this down and say specifically in her opinion, but I don't think she was intending to say she found every single business expense to be improper. She was just saying there was enough of that that it supported her finding of sham. It supported the idea that they were using the trust to pay their personal living expenses. We have discussed the other issues that this case would include, the imposition of the accuracy-related penalties under 6662. I think the taxpayer's argument on that point was essentially that they couldn't, that the cases that the tax court cited and that we cited were newer cases and that they couldn't have known that their business would not pass muster when they were setting it up back in the early 90s. I would just point out a number of the cases predate that. This court's Muda case from 1984, Neely from 1985, the tax court's Marcosian case from 1980. I think the tax court correctly found in this case that the Swansons should have been on notice that what they were doing would not pass muster with the IRS. And then finally, the last point would be the imposition of the sanctions for frivolous litigation, the 6673 penalty. And again, they were adequately warned through the case law, certainly by the time that they filed this suit in the tax court in 2000 or 2001. By the time it came to trial in 2007, they should have been aware that their positions were without any merit and there was no abuse of discretion for the tax court to award sanctions. With that, I would just rest on what we've said in our briefs. I'd be happy to answer any questions. I have a question. Now, the commissioner determined that Swansons had failed to report, for example, in 1995, $1,110,993. But then there were some allowances for deficiencies and penalties and also some deductions, apparently. So they wound up with a deficiency of $191,486. And they reported something like $90,000 or something like that, $94,258 for that year to begin with. And so when they wound up with a deficiency of $191,486, not counting the penalty for understatement, that would seem to indicate, although I didn't go back and compute whatever the tax rates were at that time, that would seem to indicate that there were a fair amount of deductions allowed in order to wind up with a deficiency of $191 compared to over a million dollars in income. Is that a general characterization of that? I don't know the numbers offhand, but it is certainly true that a fair amount of deductions did get allowed. To the extent, if your question is going to the propriety of the sanction for frivolous litigation, I think the tax court's response on that is correct, which is that while they did, in a sense, succeed in getting certain deductions restored and recognized by the commissioner, that wasn't necessarily a result of the litigation, or they shouldn't have had to go to tax court to do that. Had they cooperated with the investigation instead of stonewalling and telling the investigator, I'm not going to tell you that, or I don't think you know how to speak English, or you don't even know what I'm talking about, or objecting, asked and answered, and so forth, had they really given the information at the time, the commissioner probably would have made those adjustments then. They didn't need to go to court to actually get that done. Well, but if they got a substantial amount of deductions that resulted in a deficiency that looks fairly significantly lower than you expect the taxes would be, wouldn't that be a factor in looking at those relative figures as to a penalty? If you're talking about the frivolous litigation penalty, no, because I think the tax court is correct on that point. If you mean the penalty as to the substantial understatement, I believe that the numbers do match up. In other words, that they still, even with the adjustments, have ended up understating their taxes by the correct percentage. But I'm sorry I don't have the numbers right in front of me here. Well, with that, I'll sit down and thank you very much for your time and attention. We'll give you a minute for rebuttal. It's incorrect about the non-cooperation. My esteemed colleague here failed to point out we were denied an appellate conference for the IRS appeals. He also fails to point out Evans was indicted and that they got an abatement for seven, eight years waiting for his case to be tried. And so the non-cooperation we reject, and we do not believe it's supported by this record. Now, it is true that you look at how much a taxpayer wins when it goes to court. You can see that in the Ninth Circuit decisions before you brand the case as frivolous. And the Court of Appeals has the discretion to determine, based on all the issues presented and what the results were, whether they're going to uphold the penalty. It's one thing to say it's frivolous in this court. It's another one, of course, to say it's frivolous in the tax court. But you look at it from both of those angles in both courts. Now, the last thing I'll add, so I don't go over time, is that the education expense he talks about was approved for beneficiary education in Stipulation No. 59. That was for the year 1993. It was not allowed in 1995. Insurance expense was not allowed in 1993. But it was allowed in Stipulation No. 71 and No. 93 for 1994 and 1995. And I have a chart of these things that they allowed and they disallowed. The point is that you can't allow an expense for one year and say it's evidence of sham. And you can't say that unless you have a record where you break out each year and say it was a sham the way this thing operated for 93, but it's not a sham for 94. It's a sham for 95, but not a sham for another year. Unless you have a record like that, you can't review it. That's the tax court's responsibility to put their findings out on the record so that you can review it if we present them the evidence. And I understand we have a briefing responsibility to help you put that forth, and I'm sorry if I didn't comply with it. But this is a case where substantial injustice has been done because underlying all this you should be looking at what is the personal benefit that the Swansons got out of these years, 93, 94, 95, what personal expenses did they get paid that didn't benefit FSH, that didn't benefit the business. Because basically all business deductions can have some element of personal benefit. The question is whether the personal benefit is at least equal to the business or the business benefit outweighs the personal, and that's where Congress comes in. Thank you very much. Okay, this case, Swanson v. Commissioner, is submitted. We'll next hear Nantes v. New London County Mutual Insurance Company.
judges: Piersol, Nelson D. W., Ikuta